## LIFE INSURANCE COMPANY OF NORTH AMERICA

v.

## Sharon K. HUNTER, et al.

## Civ. A. No. 91–1243.

United States District Court,
E.D. Louisiana.

Jan. 6, 1992.

Donald T. Giglio, Law Offices of Donald T. Giglio, New Orleans, La., for plaintiff.

Sharon Kaye Hunter, New Orleans, La., for defendant.

Deborah Majeeda Snead, Howell & Snead, New Orleans, La., for intervenor.

ARCENEAUX, District Judge.

A motion for summary judgment was filed by Life Insurance Company of North America ("LINA") and taken on the papers on December 11, 1991. The Court, having reviewed the pleadings, papers, exhibits, affidavits and the relevant law, finds that there is no merit in LINA's motion. While this Court recognizes that under the jurisprudence of this circuit, generally, punitive damages are not recoverable under ERISA,[1] the peculiar factual circumstances

1. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.,* 793 F.2d 1456, 1462–65 (5th Cir.1986). This decision has been interpreted by various district courts to prevent the awarding of "extra-contractual compensatory damages." *See Goodman v. S & A Restaurant Corp.,* 756 F.Supp. 966, 971 (S.D.Miss.1990); *Moffitt v. Blue Cross & Blue Shield of Mississippi, Inc.,* 722 F.Supp. 1391, 1394 (N.D.Miss.1989). In this action, the beneficiaries do not seek punitive damages or compensatory damages for mental anguish or emo-

of this case would allow the Court to award equitable relief in this instance. Because there are a number of questions of fact with regard to each party's position in this action, the Court cannot at this time enter judgment.

## BACKGROUND

This complaint for declaratory judgment and for statutory sanctions concerns death benefits of $509,600.00 arising from a life insurance policy and an accidental death insurance policy issued to Muriel Encalarde, who died on September 10, 1988. The named beneficiaries of the policies are three of the deceased's four minor children, Wayne Encalarde, Marcia Encalarde and Khrysten Encalarde. The instant policies are governed exclusively by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

Their father and the husband of the decedent, Wayne Encalarde, who was evidently confirmed as their natural tutor on September 20, 1988, was implicated in their mother's death. On October 13, 1988, Wayne Encalarde was charged with manslaughter; trial did not commence until May 2, 1990. In the interim, on August 22, 1989, Sharon Hunter was appointed tutrix over the property of the minor beneficiaries.[2]

It has been represented to the Court, without documentary evidence, that there has been an ongoing dispute before Judge Robert Katz of Civil District Court for the Parish of Orleans with respect to the proceeds of these policies and any interest due thereon. The intervenor maintains that LINA received notice of a claim for death benefits on October 21, 1988. No proof of this claim being made on that date is in the record.

It further appears that LINA first attempted to tender the proceeds to the beneficiaries on August 24, 1990, (practically two years after their mother's death) predicated on the execution of a receipt and release which would defeat the beneficiaries' claim for interest on the amount due. On November 9, 1990, LINA filed in Civil District Court, a rule to show cause why death benefits should not be distributed. On January 18, 1991, prior to the hearing on that motion and in chambers, Judge Katz evidently recommended that the money be distributed and an action be instituted to determine if interest were due. A compromise to that end was reached; however, the compromise never was consummated.

In the interim, Wayne Encalarde's criminal trial ended in a mistrial on May 9, 1990. On November 30, 1990, the Fourth Circuit Court of Appeal rendered a decision, which ostensibly barred the retrial of Wayne Encalarde and, on January 31, 1991, the Louisiana Supreme Court denied the district attorney's application for supervisory writs.

LINA filed this action in federal district court on April 1, 1991, to have the court (1) declare the respective contractual rights and obligation of the parties to this litigation; (2) declare that no interest is due on the money in question; (3) order the dative tutrix (Sharon Hunter) to accept the money in question on behalf of the beneficiaries; and make an award of statutory sanctions for the preparation, filing and prosecution of this litigation. (Complaint, Doc. 1).

tional distress, they seek only the interest on $509,600.00 from the notice of the claim for benefits. There was never a dispute as to that amount being due to the beneficiaries in this instance.

**2.** The Court has not been provided with competent evidence of the September, 1988 confirmation. As an exhibit to Intervenor's Answer (Doc. 7), a xeroxed copy of a judgment recognizing Wayne Encalarde as the natural tutor of these children is attached; however, it is not a certified copy and, as such, cannot be recognized as competent evidence of this fact. As additional proof of Wayne Encalarde's status

with respect to his children at the present time, at paragraph 8 of LINA's statement of uncontested facts, mention is made of an order signed by Judge Katz "which withdrew the appointment of defendant, Sharon Hunter, as dative tutrix of the property of defendants, ..., and ... confirmed Wayne Encalarde as the natural tutor of the property" of Wyane, Marcia and Khrysten Encalarde. Again, the Court has not been provided a certified copy of the same, nor is any mention made of this fact in the intervenor's "Statement of Undisputed Material Facts."

To add to the procedural quagmire, a default against Sharon Hunter was entered by the Clerk of Court on April 29, 1991. On the same day, Ms. Hunter answered the complaint. A motion to set aside the entry of that default is presently set for hearing on January 22, 1991.[3] Also, on May 14, 1991, Magistrate Judge Ronald Fonseca allowed Wayne Encalarde, to intervene as a defendant based on his being the beneficiaries' natural tutrix. It is counsel for the intervenor who opposed this motion for summary judgment.

A pre-trial conference is presently set on January 15, 1992, and trial is scheduled to commence on February 6, 1992. Only the plaintiff has filed a witness list to date.

## MOTION FOR SUMMARY JUDGMENT

LINA apparently distributed all of the proceeds of the policies in question to the beneficiaries, Wayne, Marcia and Khrysten Encalarde on July 22, 1991, through their natural tutor, Wayne Encalarde. LINA has moved the Court in its motion for summary judgment to declare (1) that no interest is due by LINA and (2) that LINA has fulfilled all of its contractual obligations under the policies in question. There is no mention in the motion as to sanctions originally sought. Furthermore, LINA argues that the issue, although not raised in any pleading of which the Court is aware, of whether Sharon Hunter should be responsible for the interest on the proceeds because of her alleged mishandling of this matter, should not be resolved in the Court's ruling.

The intervenor maintains that there was no just reason for LINA's delay in paying over the proceeds since the beneficiaries were not implicated in the death of Muriel Encalarde. Furthermore, the money in question could have been the subject of a concursus proceeding whereby interest would have accrued on this sizable sum. Intervenor also questions LINA's position that the civil district court refused to appoint Mr. Encalarde as tutor. Finally, the intervenor (Mr. Encalarde) maintains that under ERISA section 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), a civil action may be brought by a beneficiary or fiduciary in order to obtain other appropriate equitable relief. Under the circumstances of the instant suit, the intervenor argues that equity demands that interest be paid by LINA on the amount due.

Under section 502(a)(3)(B), courts have awarded pre-judgment interest on the proceeds, however, apparently not in this circuit. The cases cited by LINA stand for the proposition that punitive damages are not available under ERISA; however, the defendants here seek only what equity demands—interest on $509,600.00 which LINA earned prior to releasing the money in 1991.

Plaintiff argues that "interest lost" is not recoverable under *any* ERISA provisions citing *Sublett v. Premier Bancorp Self-Funded Medical Plan,* 683 F.Supp. 153 (M.D.La.1988). However, a close reading of that case demonstrates the court based its conclusion that extra-contractual or punitive damages are not recoverable under section 502(a)(3)(B) of ERISA on *Sommers Drug Stores Co. Employees Profit Sharing Trust v. Corrigan Enters., Inc.,* 793 F.2d 1456, 1464 (5th Cir.1986), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

In *Sommers,* the court dealt strictly with the issue of punitive damages. *Sommers,* 793 F.2d at 1463. In grappling with the issue, the court concluded that to determine Congress' intent concerning the type of "equitable relief" recoverable under ERISA section 502(a)(3), one looks to the law of trusts. As such the court determined that punitive damages are not recoverable.

The *Sommers* court examined the Restatement (Second) of Trusts to determine what comprises "equitable relief." Section 205 provides:

If the trustee commits a breach of trust, he is chargeable with:

---

**3.** The Court has been informed that LINA has no opposition to that motion and therefore the

default against Sharon Hunter will be set aside.

**50**

(a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or

(b) any profit made by him through the breach of trust; or

(c) any profit which would have accrued to the trust estate if there had been no breach of trust.

*Id.* at 1464, citing Restatement (Second) of Trust § 205 (1959).

Under the facts of this case, it is clear that LINA had the use of $509,600.00 for approximately three years. It has profited from the use of that money. Although this Court could not find any decision on point rendered by the United States Court of Appeals for the Fifth Circuit nor the United States Supreme Court, there is jurisprudential support for pre-judgment interest being due to the beneficiaries. *See Dependahl v. Falstaff Brewing Corp.*, 496 F.Supp. 215 (E.D.Mo.1980), *aff'd,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). It is a matter that is within the discretion of the court. *See* Cooke, R., *ERISA Practice and Procedure* § 8.10, at 8–39 (1991).

If the allegations of the intervenor prove true, this Court is inclined to award some type of equitable relief sought. However, the case presented leaves material questions of fact which must be answered. Furthermore, the Court will require briefing concerning the computation of any pre-judgment interest it might award.

This case could be one which might be resolved on the pleadings and deposition testimony if properly presented. However, the record to date is grossly devoid of any proof with respect to the chronology of events. Furthermore, from the pleadings filed, it does not appear that this matter is in a posture to proceed to trial. In particular, the Court questions Sharon Hunter's role and continued participation in this matter. Accordingly,

IT IS ORDERED that the motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that the trial date of this matter is UPSET and the pre-trial conference scheduled is converted to a status conference to discuss the further prosecution of these claims.

IT IS FURTHER ORDERED that the motion of Sharon Hunter to set aside the default taken is GRANTED as unopposed.